HARTZ, Circuit Judge,
concurring in part and dissenting in part:
I concur in reversal and remanding to the district court, but I do not join the panel opinion. Athough there is much with which I agree in that opinion, I read the controlling statutory provision— CERCLA § 101(9), 42 U.S.C. § 9601(9)— differently than does the majority. In my view, whether the Dorman Farm constitutes a “facility” depends on whether a “hazardous substance,” within the definition of the term in CERCLA § 101(14), 42 U.S.C. § 9601(14), has been deposited on the farm. Perhaps the hog waste is a “hazardous substance”; or perhaps ammonia within the waste fits the definition. But this issue has not been briefed or argued by the parties and should be addressed on remand.
Seaboard allegedly violated CERCLA § 103, 42 U.S.C. § 9603. That section requires “[a]ny person in charge of a ... facility” to report promptly “any release ... of a hazardous substance from [the] facility” in quantities above certain established levels. Id. “Facility” is defined as follows by CERCLA § 101(9):
The term “facility” means (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.
At first glance, part (B) of the definition appears to subsume part (A) — any facility described in part (A), such as a building or a lagoon, is on a “site” or “area” and thus is encompassed by part (B) of the definí *1177 tion. But there is a qualifier in part (B) that does not apply to part (A). To qualify as a “facility” under part (B) of the definition, the site or area must be a place “where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located.” Thus, a building, say 'a coal-fired power plant, could be covered by part (A) but not by part (B) if hazardous waste is not located in the plant. The hazardous waste might be produced by burning the' coal and is then emitted into the atmosphere. Ler-haps one could say that such waste “has ... come to be located” in the power plant because it resides (briefly) in the smokestack before being emitted; but that would strike me as a stretch of the statutory phrase. In common usage we would not say that an item has been placed or come to be located in a conduit that it passes through in an instant. Moreover, if “placed, or otherwise come to be located” is interpreted to include such a transient passage, one wonders what the purpose of part (A) is; whenever a hazardous substance is released from an item (other than a vehicle) listed in part (A), that item would be on a site that satisfies part (B).
If my reading of § 101(9) is correct, then the result in this case depends on whether the animal waste (or ammonia within it) at Dorman Farm is a “hazardous substance.” If it is not a hazardous substance, then only part. (A) of the definition of “facility” applies. And I see no way to interpret any of the components of the part (A) definition to encompass the entire farm. Those components are discrete objects — a building, a pipe, a pond, etc. No liberal definition of the word “building” could reasonably include a group of dispersed buildings.
On the other hand, if the animal waste is a “hazardous substance,” part (B) of the definition of “facility” applies, and it would be appropriate to treat the entire farm as a “site” or “area.” The- opinions relied on by the panel opinion in support of an expansive interpretation of the definition of “facility” all relate to part (B) of the definition.
My reading of § 101(9) is also consistent with an EPA statement relied on by Seaboard. The statement relates to reporting requirements under CERCLA § 103. A person in charge of a facility must report any known release of a reportable quantity (RQ) of a hazardous substance from the facility. Releases are aggregated over a 24-hour period to determine whether they reach the RQ. In an introductory statement accompanying its. final rule on “Notification Requirements: Reportable Quantity Adjustments,” 50 Fed.Reg. 13456 (April 4, 1985), the EPA explained that if a plant contains several “facilities,” the plant can prepare one report of RQ releases from the entire plant, but whether there has been an RQ release is determined on a facility-by-facility basis. In other words, even if the release by the entire plant exceeds the RQ, there is no reporting requirement if there was not an RQ release by any single facility. If, however, several facilities at the plant each experienced an RQ release, the plant may submit a' single report covering all the releases.
The EPA wrote:
Several commenters discussed the Agency’s statement that “for notification purposes, EPA will consider the entire contiguous plant or installation and contiguous grounds under common ownership to be the reporting facility rather than each vent, pipe, or piece of equipment at such a plant” (48 FR 23553). Some of the commenters appeared to misinterpret EPA’s intentions.
The Agency intended the statement to reflect its belief that numerous concurrent releases (releases occurring within the same 24-hour period) of the same *1178 hazardous substance from one contiguous plant or installation need not be reported individually, but should be reported in a single notification. This policy will avoid unnecessary and burdensome calls where a plant is experiencing more than one reportable release, because it allows the regulated community to consider multiple concurrent releases of the same substance as one release for reporting purposes.
The comments received favored this policy, although a few commenters suggested that EPA expand the definition of facility to include outdoor areas within the boundary of a plant. In addition, some commenters questioned whether a releaser must aggregate the total volume of concurrent releases in order to determine if a reportable quantity has been met or exceeded.
The “facility” from which a release has entered or may enter into the environment does not include outdoor areas. Rather, the definition of “environment” includes all outdoor (i.e., not completely enclosed) areas surrounding and within a given facility. All concurrent releases of the same substance from a particular facility into the environment must be aggregated to determine if an RQ has been exceeded. Releases from separate facilities, however, need not be aggregated. EPA intends for multiple concurrent releases of the same substance from a single facility to be reported in a single notification as a single release. Where multiple concurrent RQ releases are occurring at various parts of a contiguous plant or installation on contiguous grounds under common ownership (e.g., at a chemical manufacturing plant or an oil refinery), the person in charge should also report these multiple concurrent releases in a single notification. The policy of consolidating notifications also applies to concurrent releases from separate storage facilities, so long as the releases are at the same location, i.e., located on contiguous grounds under common ownership.
Id. at 13459 (emphasis added). Although this statement is not as clear as one would like, it certainly assumes that a single plant or installation (such as a “chemical manufacturing plant or an oil refinery”) might not itself be a “facility” even though it includes several “facilities.” See also “Clarification of Notification CERCLA Requirements for Facilities” in Emergency Preparedness and Community Right-to-Know Act — Questions and Answers (Feb. 1999), at http://yosemite.epa.gov/ oswer/ceppoweb.nsf/vwResourcesByFile-name/epcra-qa.txt/$File/epcra-qa.txt (stating that releases from two facilities “on contiguous ground under common ownership” should not be aggregated to determine whether RQ has been reached). This makes sense if only part A of the definition of “facility” applies — part (B) (which could well encompass a “site” including the entire plant) being inapplicable because the “hazardous substance” emitted by the plant is not considered to “ha[ve] been deposited, stored, disposed of, or placed, or otherwise come to be located” there even though it travels through a smokestack or the like.
Having said all this, I add a note of caution. CERCLA is notorious as a complex, poorly crafted statute. What appears to be a straightforward reading of statutory language may fail to take into account important features of the statute. An amicus brief from the EPA would have been helpful.